IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PATRICIA VANHUSS and MICHAEL VANHUSS,

               Plaintiffs,

    v.

RAUSCH, STURM, ISRAEL, ENERSON & HORNIK
and ABSOLUTE RESOLUTIONS CORPORATION,
a/k/a ARC REWARDS,

               Defendants.

OPINION AND ORDER

16-cv-372-slc

This is a civil action for damages and injunctive relief brought pursuant to the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Wisconsin Consumer Act

("WCA"), Wis. Stat. §§ 425-427. Plaintiffs Patricia and Michael VanHuss contend that

defendants Rausch, Sturm, Israel, Enerson & Hornik and Absolute Resolutions Corporation

violated §§ 1692(e)(5) and 1692g(b) of the FDCPA and similar provisions of the Wisconsin

Consumer Act by commencing a small claims collection action before complying with a request

sent by Patricia VanHuss for validation of the debt, and then maintaining that lawsuit for 53

days after VanHuss filed a motion to dismiss in which she asserted that defendants had failed

to respond to her request for validation of the debt.

Before the court is defendants' motion for summary judgment on all of plaintiffs' claims.

Dkt. 29. I am granting this motion for every claim but one: Patricia VanHuss's claim under §

1692g(b) of the FDCPA survives. Although defendants have shown that their failure to provide

her with validation of her debt before suing her in small claims court was the result of an

unintentional, bona fide error, reasonable factfinders could disagree whether defendants had

procedures in place that were reasonably adapted to avoid any such error. Accordingly, I must deny defendants' motion for summary judgment on their bona fide error defense under § 1692k. I further reject defendants' argument that Patricia VanHuss must show that the alleged violation of § 1692g(b) was material. However, I agree with defendants that Michael VanHuss cannot proceed on this claim because he has not shown that he suffered any plausible injury as a result of defendants' actions.

Plaintiffs' remaining claims will be dismissed. Wis. Stat. § 425.107 does not confer a private cause of action on consumers, and plaintiffs have failed to show that defendants' maintenance of the collection action for 53 days after Patricia VanHuss filed a motion to dismiss constitutes prohibited action under either the FDCPA or WCA.

From the parties' submissions, I find the following facts to be undisputed and material to the motion for summary judgment.

## UNDISPUTED FACTS

### I. The Parties

Plaintiffs Patricia VanHuss and Michael VanHuss reside in Reedsburg, Wisconsin. Defendant Rausch, Sturm, Israel, Enerson & Hornik LLC ("RSIEH") is a law firm with an office in Brookfield, Wisconsin. Defendant Absolute Resolutions Corporation ("ARC") is a debt buyer with an office in San Diego, California.

## II. RSIEH Attempts to Collect a Debt from Patricia VanHuss

Patricia VanHuss incurred a debt to Citibank Retail Card for an AT&T Universal Rewards Card on which she defaulted. VanHuss received and retained billing statements sent in connection with her account. Citibank sold its interest in the debt to ARC, which in turn retained RSIEH as counsel for the purpose of collecting the debt.

On January 2, 2015, Citibank sent a letter to Patricia VanHuss informing her that her account with a number ending in 7310 and with a balance of $8,564.12 had been sold to ARC. In the letter, Citibank told VanHuss that she should send future payments or correspondence regarding her debt to ARC. It provided ARC's mailing address as PO Box 880306, San Diego, CA 92168-0306. Patricia VanHuss received this letter.

On or about September 18, 2015, Patricia VanHuss received from RSIEH a letter advising her that ARC had referred the debt to RSIEH for collection of the balance owed. Among other things, RSIEH advised VanHuss that the original creditor was Citibank Retail Card, the account balance was $8,565.12 and she had a right to dispute the validity of the debt. The September 18, 2015 letter identified ARC's contact information as 6602 El Cajon Blvd. Ste. 200, San Diego, CA 92115.

Patricia VanHuss testified that on October 15, 2015, she printed a "validation" letter from the internet, by which she intended to dispute the debt and request validation as allowed

by § 1692g(b).[1]  According to VanHuss, she mailed this letter via certified mail to RSIEH on October 17, 2015.  She received a certified mail receipt showing that RSIEH received her mailing on October 19, 2015.

RSIEH's mailroom log confirms that the firm received a piece of certified mail from Patricia VanHuss on October 19, 2015.  However, neither the certified mail receipt nor the mailroom log describes what was in the envelope.  According to the mailroom log, the envelope was marked for distribution to attorney Shane Gale, who is RSIEH's Managing Attorney for its Wisconsin office.  However, Gale never received any debt validation request from Patricia VanHuss, and defendants do not know what happened to it.

Consequently, unaware that VanHuss had sent a validation request or otherwise disputed the debt, RSIEH began collection proceedings.  On November 24, 2015, in its capacity as counsel for ARC, RSIEH filed a small claims action on ARC's behalf against Patricia VanHuss in Sauk County Circuit Court.  Michael VanHuss was not named as a defendant.

---

[1] 15 U.S.C. § 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

On December 14, 2015, Patricia VanHuss filed a motion to dismiss the collection case, asserting that service of process was ineffective and ARC lacked the capacity to sue her because it had not responded to her October 15, 2015 validation request. The court ordered briefing on the motion and VanHuss filed a letter brief in support on January 28, 2016. Eight days later, RSIEH responded to the motion by advising the court that it did not object to dismissal of the action without prejudice. The state court dismissed the collection case on February 5, 2016, 53 days after Patricia VanHuss filed her motion to dismiss. Since that time, defendants have taken no further steps to collect VanHuss's debt.

## III. RSIEH's Policies Concerning Debt Disputes

Attorney Gale was deposed as RSIEH's representative pursuant to Rule 30(b)(6). Gale explained RSIEH's policies and procedures for complying with federal and state debt collection laws. Gale has been RSIEH's State Managing Attorney for Wisconsin since June 2015; before that, he worked at RSIEH as an associate since 2009.

RSIEH utilizes a bonded mail courier to transport mail to and from its office. Its bonded courier is required to enter RSIEH's office through a secured entrance, and a log is maintained that records the details of each person's passage through security. When mail is received, RSIEH's receptionist immediately notifies the mailroom, at which point a certain employee is expected to transport the delivered mail from reception to the secured mailroom. Upon arrival in the mailroom, each piece of certified mail is logged and saved to create a record of the tracking number, the identity of the RSIEH employee who opened it, and the identity of the individual to whom it would be routed. Once the mail is sorted, it is placed in folders organized to reflect the path of delivery. The mail is then distributed by folder along the expected path.

All consumer disputes and requests for validation related to Wisconsin consumers are directed to Attorney Gale. It is RSIEH's policy to honor disputes and debt validation requests regardless of whether they are received within the 30 days following a consumer's receipt of the notice required by § 1692g(a).

According to Gale, RSIEH trains mailroom employees to identify types of correspondence RSIEH receives to ensure mail is properly sorted and routed. This training includes instructing mailroom staff to recognize words such as "validation" and "verification." Gale, however, could not say what the qualifications RSIEH required for employment in its mailroom, he did not know whether any mailroom training policies were documented in writing or available on video, he did not know who provided the training to the mailroom employees, and he could not say when the mailroom employees had been hired who were working in October 2015 .

The following categories of mail are routed to Gale: (1) mail addressed directly to him; (2) all debt verification requests related to Wisconsin consumers; (3) all mail related to Wisconsin litigation in which RSIEH is counsel of record that is not otherwise addressed to a specific attorney. According to print-outs submitted by plaintiffs that were obtained by searching Wisconsin's online database of court records, RSIEH is the law firm of record in nearly 3,500 active Wisconsin cases; Gale himself is listed as the attorney of record on 309 of these Wisconsin cases. Gale also appears as the attorney of record on thousands of Wisconsin small claims cases, but plaintiffs' submissions do not show how many of these cases are open or how old they are.[2]

---

[2] I take judicial notice of these facts. Fed. R. Evid. 201(b)(2) (court may take judicial notice of fact that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned).

Attorney Gale personally reviews and sorts his mail and distributes it to others, as necessary. Gale testified that he ordinarily processes his mail in this order: first, he reviews pleadings and processes them or routes them to another attorney (if related to a case that was assigned to another attorney; second, he reads through debt verifications and other consumer mail; and third, he goes through court notices and give those to his legal assistant to enter into calendars and the electronic file database for scheduling. Gale depo., at 61, at 12-18. When asked at his deposition whether he could estimate with any level of accuracy the number of pieces of mail that are routed to him on a given day, he could not, stating, "It varies." Dkt. 33, at 54, lines 1-3.

RSIEH maintains written procedures concerning the handling of consumer disputes and requests for validation once they are received. These are set forth in a document entitled "Consumer Dispute & Debt Validation Standard." Aff. of Shane Gale, Dkt. 32, Exh. A. These procedures document various steps that RSIEH employees must take once a validation letter has been received to ensure that debt collection activities cease. Upon receipt of a verbal or written dispute or request for validation, a certain code must be entered into the corresponding electronic file. Consumer cease-and-desist requests are coded in a similar fashion. Upon entering the specified codes, RSIEH clients, such as ARC, are notified electronically of the facts giving rise to the codes. Copies of written disputes and validation requests must be scanned into the electronic file. Entry of the specified codes into RSIEH's electronic file after receipt of a dispute or validation requests causes RSIEH's electronic file to block further collection efforts on the file, although an attorney can "override" the "cease-and-desist" code if he or she needs to do work on the file.

RSIEH's Director of Compliance monitors all files with the specified codes to ensure proper coding and handling. Once RSIEH compiles the documentation or information necessary to respond to the dispute or validation request, such information and documentation is scanned to the corresponding electronic file and reviewed by a RSIEH attorney. With the approval of RSIEH's attorney, relevant information or documentation is sent to the consumer by mail. After the information or documentation is sent to the consumer, the attorney enters another code into the corresponding electronic file. Entry of that code causes the removal of the "dispute" code. Removal of the "dispute" code from the electronic file results in the ability to engage in further collection efforts.

To safeguard against the possibility of incorrect code entry during the course of receiving and responding to a consumer's dispute or request for validation, RSIEH attorneys are required to review a consumer's file for outstanding validation requests. If a RSIEH attorney sees an outstanding validation request when reviewing a file for suit, then the attorney must reject the suit and add any code required to complete the validation response process. In the event that a validation request is not responded to by the creditor within 60 days of receipt, RSIEH will close the file and return it to the client.

Had defendants known that RSIEH had received a debt validation request from Patricia VanHuss, they would not have filed the small claims action against her. Until this case, RSIEH was unaware of any instance in which its procedures failed to prevent the error suggested by plaintiffs' claims. After learning of the alleged error that occurred in this case, Rausch amended its procedures. Now, Rausch's staff cross-checks the certified mail log to ensure that the logged mail was actually delivered, and the last four digits from the certified mail receipt are entered into the corresponding electronic file.

# OPINION

## I. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute of "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004). As the Seventh Circuit has explained, summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citing Fed. R. Civ. P. 56(e)).

## II. Plaintiffs' FDCPA Claims

Plaintiffs are pursuing two theories of liability under the FDCPA. First, they contend that defendants violated 15 U.S.C. § 1692g by filing the state collection action without providing Patricia VanHuss with verification of the debt. Second, they assert that defendants violated 15 U.S.C. § 1692e(5) by allowing the state court action to remain open for 53 days

even after Patricia VanHuss filed her motion for dismissal in which she asserted that defendants had not validated her debt. Defendants do not dispute that they are debt collectors who were required to abide by the FDCPA, but they deny that they are liable under the Act.

### A.   15 U.S.C. § 1692g(b)--Bona Fide Error Defense

Under the FDCPA, a debt collector who communicates with a consumer in connection with the collection of any debt must send the consumer a written notice containing the amount of the debt and the name of the creditor to whom the debt is owed, and must inform the consumer that he or she has 30 days in which to dispute the debt or it will be assumed valid. 15 U.S.C. § 1692g(a). If the consumer notifies the debt collector in writing within the 30-day period that the debt is disputed, then the debt collector must cease collection of the debt until the debt collector obtains verification of the debt and mails it to the consumer. § 1692g(b).

Plaintiffs contend that defendants violated § 1692g(b) by commencing a small claims action in state court before complying with Patricia VanHuss's written request for verification of the debt, which she claims to have sent to RSIEH via certified mail on October 17, 2015.[3] For purposes of their motion for summary judgment, defendants concede that (1) Patricia VanHuss mailed this letter, (2) RSIEH received it and (3) defendants failed to provide the

---

[3] Both sides in this lawsuit treat RSIEH and its client, ARC, as if they are a single entity. This court will follow suit.

requested verification.[4]  Defendants contend that they are nonetheless insulated from liability under the bona fide error exception to the FDCPA.

Section 1692k of the FDCPA provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692(k).

To establish that they are qualified for the bona fide error defense, defendants must show that the violation was (1) unintentional, (2) resulted from a bona fide error, and (3) occurred despite maintenance of procedures reasonably adapted to avoid any such error.  *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005).  Section 1692k(c) "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution."  *Kort*, 394 F.3d at 539; *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more . . . § 1692k(c) only requires collectors to adopt reasonable procedures.").

### 1. The violation was unintentional

Regarding the first prong, a debt collector "need only show that its FDCPA violation was unintentional, not that its actions were unintentional."  *Nielsen v. Dickerson*, 307 F.3d 623, 641

---

[4]  In their response brief, plaintiffs ask this court to grant summary judgment on their claim that defendants violated the FDCPA by failing to respond to Patricia VanHuss's validation request.  Dkt. 37, at 6.  I decline to do so.  The motion is untimely and opposed by defendants, who say there are facts not in the record that suggest that VanHuss might not have actually enclosed a validation request in the certified mail envelope, as she claims.

(7th Cir. 2002) (debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense."). Defendants have met this burden. Although RSIEH's mailroom log indicates that it received a certified mail envelope from Patricia VanHuss and RSIEH has conceded for summary judgment purposes that it contained a letter seeking debt validation, RSIEH never found the letter or a scanned copy, and no cease and desist code ever was entered in VanHuss's file on its electronic system.

According to RSIEH, if it had been aware of the letter, then it would have provided validation of the debt before it filed a collection action or engaged in further collection efforts. As defendants point out, RSIEH has a policy of honoring all disputes and debt validation requests regardless whether they are received within the 30 days following a consumer's receipt of the notice required by § 1692g(a) or whether a dispute is made verbally instead of in writing. The firm takes debt validation requests seriously, maintaining a set of procedures to be followed whenever a debt verification request is received and which are designed to ensure that collection activities cease until the verification has been provided. RSIEH simply lost the VanHuss letter. Its resulting FDCPA violation was not intentional.

Plaintiffs nevertheless contend that defendants intentionally violated the FDCPA, pointing to defendants' activity in the state court collection action. Specifically, plaintiffs note that defendants did not promptly dismiss their case after Patricia VanHuss alleged in her motion to dismiss that defendants lacked the capacity to sue her because they had not responded to her validation request. According to plaintiffs, a factfinder could easily find from this conduct that

defendants "did not care about the validation request," which in turn supports an inference that defendants acted deliberately in violating the FDCPA. These contentions stretch the facts past their breaking point. VanHuss's allegation that she had requested validation of her debt was merely that: an allegation. Defendants were not required instantly to accept this allegation at face value and dismiss their case immediately. They were entitled at the least to investigate this allegation before deciding how to respond to it.

Moreover, as defendants points out, even if their investigation suggested that what VanHuss was saying could be true, they were not required to dismiss the lawsuit. The FDCPA is a remedial statute that regulates the practices used to collect a debt, irrespective whether a valid debt actually exists. *Adair v. Sherman*, 230 F.3d 890, 895-96 (7th Cir. 2000); *Bauman v. Bank of America, NA*, 808 F.3d 1097, 1102 (6th Cir. 2015); *Liesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 996-97 (3d Cir. 2011); *Azar v. Hayter*, 874 F. Supp. 1314, 1317 (N.D. Fla. 1995). In other words, violations of the FDCPA by a debt collector do not provide a defense to the validity of the underlying debt. A debtor who is sued for collection on a debt may assert a FDCPA violation as a counterclaim, but any damages awarded would merely provide an offset against any judgment awarded to the debt collector. Thus, defendants were not required to dismiss the collection action against Patricia VanHuss merely because she alleged that defendants had failed to provide validation in accordance with § 1692g(b). Their failure to do so has no bearing on whether they intentionally violated the FDCPA when they sued VanHuss in the first place.

## 2. The violation resulted from a bona fide error

Regarding the second prong, a "bona fide error" is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538 (debt collector's erroneous explanation of unemployment exemption under Higher Education Act was bona fide where debt collector's garnishment notice adopted form language mandated by Department of Education). Defendants assert that the error that led to the violation in this case was the loss of Patricia VanHuss's letter, which they insist was the result of an inadvertent, genuine clerical error. As evidence, they point to their mail distribution and file review procedures that are designed to safeguard against the risk that a lawsuit is filed before complying with a consumer's debt validation request. There is simply no evidence, they say, to suggest that losing the letter was not a genuine mistake.

In response, plaintiffs point out that to be bona fide, the error must result from a clerical or factual mistake, not a legal mistake. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 587 (2010)). As plaintiffs see it, the "error" in this case was not the losing of the letter but the filing of a lawsuit, which is not a clerical or factual mistake. They draw a parallel with the facts in *Leeb*, in which the court held that the debt collector's action of sending a collection letter was not a bona fide error because "Nationwide does not explain how intentionally sending a letter can be considered a "'clerical or factual mistake.'" *Leeb*, 806 F. 3d at 899. The facts in *Leeb*, however, are distinguishable. In that case, the debt collector sent a collection letter to Leeb even though it knew that Leeb was disputing the debt. Here, defendants' filing of the lawsuit, though intentional, was the result of their mistaken belief that there were no unresolved requests for validation. This mistaken belief was the result of VanHuss's letter getting lost or misplaced

sometime after it was received in RSIEH's mailroom. Losing a piece of mail under these circumstances plainly is a bona fide, clerical error.

### 3. Whether RSIEH maintained procedures reasonably adapted to avoid violations of the sort alleged in this case is a question for the jury

For the third element, whether a debt collector's procedures are reasonably adapted to avoid certain errors is a fact-intensive inquiry that depends on the unique circumstances of each case. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011); *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 420-21 (8th Cir. 2008). Summary judgment for the debt collector is appropriate only if a reasonable jury could only conclude that the debt collector "actually employed or implemented" procedures to avoid errors and that those procedures were "reasonably adapted" to avoid the specific error at issue. *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006); *Reichert v. Nat'l Credit Sys. Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008). *Jerman* instructs that "procedures" are "processes that have mechanical or other such regular orderly steps . . . ." *Id.* at 587 (internal quotation marks omitted).

To meet their burden, defendants point to Gale's affidavit and deposition testimony regarding RSIEH's mailroom procedures and to its "Consumer Dispute & Debt Validation Standard," both of which, defendants assert, reasonably ensure that collection activities cease once a validation letter has been received.

Plaintiffs do not dispute that RSIEH has reasonable procedures in place to prevent further collection activities once a request for debt validation has been received by the firm, properly identified as such and scanned into the file. Plaintiffs' however, deny that defendants have met their burden of showing that they have reasonable procedures in place to ensure that:

(1) mailroom staff are able to recognize debt validation letters and direct them to the appropriate person in the firm, or (2) that debt validation requests routed to Attorney Gale are handled appropriately. The point out that defendants have not produced any written materials documenting mailroom procedures or how mailroom staff are trained, and that Gale was unable to say what the qualifications for employment in the mailroom were, who provided the training to the mailroom employees or when the mailroom employees employed in October 2015 had been hired. Plaintiffs also point out that defendants have not identified any procedures to make sure that Gale "will actually *know* that he received a validation letter" or that he handle it in an appropriate and timely manner. Plts.' Br., dkt. 37, at 20 (emphasis in original). According to plaintiffs, it is not "reasonable" to rely on a single attorney to handle every debt validation request that is sent to RSIEH's Wisconsin office in addition to a significant (though undefined) quantity of case-related correspondence.

This is a close call, but I conclude that reasonable minds could differ on whether defendants' mail handling and processing procedures at the relevant time were reasonably adapted to avoid the loss of a debt validation request. As plaintiffs point out, although defendants have extensive written materials explaining how a debt validation request should be handled by the attorney who receives it, defendants have not provided any description or documentation of its methods for training its mailroom employees to recognize those letters when they arrive at the firm. Moreover, defendants have not identified any procedure that was followed at the time of the alleged error in question to confirm that a piece of mail was properly received and handled, either by mailroom staff or attorney Gale. For example, RSIEH could have reviewed the certified mail log on a daily basis to ensure that all mail logged in has been accounted for (as it does now). Courts have rejected a finding of bona fide error under similar

circumstances.  *Accord Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 999-1000 (D. Ariz. 2010) (debt collector's failure to account for consumer's letter not excusable because "there were no written procedures in any of the employee manuals which outlined proper mail handling" and "there was no way to confirm that a piece of mail was properly received and handled."); *Carrigan v. Cent. Adjustment Bureau, Inc.*, 494 F. Supp. 824, 827 (N.D. Ga. 1980) (rejecting bona fide error defense where defendant did not have any written rules or procedures governing handling of mail but it was "just understood" that employees would "go to the Post Office, pick up the mail, bring it back, sort it, pass it out to the appropriate collector.").  *But see Thomas v. Boscia*, 2009 WL 2778105, at *4 (S.D. Ind. Aug. 28, 2009) (granting summary judgment to defendant where, although it was unclear why defendant's procedures failed to flag plaintiff's bankruptcy filing, defendant had numerous safeguards in place to flag cases and plaintiff's case was only one out of 3,327 where such an error occurred).

Debt collectors need not take "all conceivable precautions" to avoid errors, but the evidence submitted by defendants is not robust enough to allow the court to decide as a matter of law that RSIEH's procedures "reasonably" attempted to prevent the error of misplacing or mishandling a debt validation letter.  Accordingly, they are not entitled to summary judgment on the bona fide error defense.[5]

---

[5]  Defendants also argue that they are entitled to summary judgment on plaintiffs' § 1692g claim because the alleged violation—the failure to provide Patricia VanHuss with validation of the debt before suing her—was not material because Patricia VanHuss "had knowledge of all the information Defendants would have been required to provide before commencing the Collection Case." Dkt. 36, at 15.  This argument is not persuasive.  Although it is true that materiality is a required element of certain alleged violations under the FDCPA, *see, e.g., Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) (applying materiality requirement to action based on § 1692e), defendants cite no case extending that rule to actions under § 1692g(b).  Moreover, defendants' theory would lead to the illogical conclusion that only consumers who neglected to keep billing statements or stay up to date on their debts would have a cause of action under § 1692g(b).

**B.        15 U.S.C. § 1695e(5)**

Plaintiffs' second theory of liability is premised on defendants' failure to dismiss the state court collection action after plaintiff filed her motion to dismiss in which she "demanded dismissal because the debt collectors had not validated her debt."  Plts.' Br., dkt. 37, at 8. Plaintiffs contend that defendants' failure to dismiss violated § 1695e, which prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt."  Specifically, plaintiffs contend that defendants violated subsection (5), which cites as an example of a prohibited practice the making of a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1695e(5).  Plaintiffs equate defendants' failure to dismiss the state court action promptly as "threatening" to take entry of judgment against Patricia VanHuss, which plaintiffs say defendants had no right to do. Plaintiffs further argue that this claim is not subject to the bona fide error defense because defendants have not identified procedures designed to safeguard against this type of error.

Plaintiffs cite no authority for their overly broad interpretation of the term "threat" in this context.  A threat is "a statement of an intention to inflict pain, injury, damage, or other hostile action on someone in retribution for something done or not done." *See* https://www .en.oxforddictionaries.com/definition/threat.  A debt collector's failure to dismiss a collection action immediately upon learning that the consumer is claiming to have sought validation of the debt is not an expression of anything; it certainly is not an expression of the debt collector's intent to take unlawful action.  If any threat were to be considered to have been made in the case, it would have to have been when defendants filed their lawsuit in the first place.  But, as several district courts in this circuit have concluded, § 1692e(5) applies only to threats to take some future action, not to action already taken. *See VanHuss v. Kohn Law Firm SC*, 127 F. Supp. 3d

980, 988 (W.D. Wis. 2015) ("This court agrees with the majority of district courts in this circuit that extending § 1692e(5) to apply to actions actually taken conflicts with the statutory text.") Plaintiff's expansive gloss of the statute goes far beyond the FDCPA's goal of protecting consumers against debt collection abuses. It is safe to say that this is not what Congress intended.

Second, as discussed earlier in this opinion, defendants *did* have the right to pursue a judgment against VanHuss on the underlying debt, notwithstanding the fact that they apparently failed to provide her with validation of the debt. A FDCPA violation does not nullify the underlying debt or require the dismissal of an action to collect it. Thus, even under plaintiffs' rejected interpretation of the term "threat," the action that defendants allegedly threatened to take was not unlawful.

In short, there is no legal authority to support plaintiffs' theory of liability under § 1692e(5).

## III. Plaintiffs' State Law Claims

Plaintiffs allege that defendants violated two provisions of the Wisconsin Consumer Act: (1) Wis. Stat. § 427.104(1)(j), which prohibits a debt collector from "claim[ing] or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist;" and (2) Wis. Stat. § 425.107(1), which is an unconscionability provision. Defendants argue that neither of these claims is actionable. Defendants are correct.

### A. Wis. Stat. § 427.104(1)(j)

Plaintiffs' claim under Wis. Stat. § 427.104(1)(j), like their claim under 15 U.S.C. § 1692e(5), rests upon defendants' action of continuing the state court collection action after Patricia VanHuss filed her motion to dismiss. Plaintiffs insist that § 427.104(1)(j) is broader than its federal counterpart "in that it involves not just attempting or threatening to enforce a right, but simply *claiming* that right." Plts.' Br., dkt. 37, at 11 (emphasis in original).

This claim fails for the same reasons as their claim under 15 U.S.C. § 1692e(5). Just as "threatening" to enforce a right implies some sort of affirmative statement, so does "claiming" such a right. Failing to dismiss a lawsuit that already has been filed does not amount to "claiming" anything. Even if it did, defendants were justified in making such a claim. Although there are *some* violations of the WCA that provide a defense to the validity of the underlying debt, a violation of § 427.104(1)(j) is not one of them. *Footville State Bank v. Harvell*, 146 Wis. 2d 524, 535–36, 432 N.W.2d 122, 128 (Ct. App. 1988) (Wis. Stat. § 425.305(1)– which provides that "[i]n a transaction to which this section applies, the customer shall be entitled to retain the goods, services or money received pursuant to the transaction without obligation to pay any amount"– refers only to §§ 422.201, 422.405, 422.414, 422.416, 423.302, 425.108, 425.113, Stats.). As under the FDCPA, plaintiffs' allegations that defendants failed to validate Patricia VanHuss's debt before suing her, even if true, did not relieve her of liability for the underlying debt.

## B. Wis. Stat. § 425.107

In their amended complaint, plaintiffs allege that defendants acted unconscionably in violation of the WCA by filing the small claims collection action against Patricia VanHuss. Wis. Stat. § 425.107 states:

> With respect to a consumer credit transaction, if the court as a matter of law finds . . . any conduct directed against the customer by a party to the transaction, or any result of the transaction is unconscionable, the court shall . . . either refuse to enforce the transaction against the customer, or so limit the application of any unconscionable aspect or conduct to avoid any unconscionable result.

If the court finds unconscionable conduct, then it shall impose a remedy and penalty in accordance with § 425.303 in addition to providing equitable relief. § 425.107.

As defendants point out, § 425.107 is subject to a scope provision, which provides that [t]his subchapter applies to actions or other proceedings *brought by a creditor* to enforce rights arising from consumer credit transactions and to extortionate extensions of credit under s. 425.108." Wis. Stat. § 425.102 (emphasis added). In *Riel v. Navient Sols. Inc.*, 2017 WL 168900 (E.D. Wis. Jan. 17, 2017), the court examined this provision and concluded that,

> by its plain text, [it] does not permit consumers like Plaintiffs from enforcing Section 425.107's prohibitions on unconscionability via a separate civil lawsuit . . . It implies that [consumers] must raise unconscionability in the form of an affirmative defense to [a creditor's] lawsuit to collect the loans, if one is filed.

> *Id.* at *3.

Here, plaintiffs have not asserted unconscionability as a defense to the creditor's lawsuit, they have asserted unconscionability affirmatively. Although plaintiffs argue strenuously that they should be allowed to proceed because they could have asserted this claim in the state court proceeding if the defendants not dismissed it, this argument does not have much force in light of the fact that it was Patricia VanHuss who urged dismissal. Moreover, plaintiffs' policy arguments, *see* dkt. 37, at 13, are unpersuasive against the plain language of the statute. Having read the statute and having considered he court's reasoning in *Riel*, I agree that under the plain

language and context of § 425.107, the statute does not confer an independent right of action. This claim must be dismissed.

## IV. Claims Against Michael VanHuss

The only connection that Michael VanHuss has to this action is that he is married to Patricia VanHuss. Plaintiffs say that as Patricia VanHuss's husband, he was "potentially exposed to liability" in the state collection action and therefore can recover under the FDCPA. Defendants disagree, arguing that they are entitled to summary judgment against Michael VanHuss on all claims because there is no evidence that he was subject to any debt collection activities.

Defendants cite *Johnson v. LVNV Funding*, 2014 WL 4852027 (E.D. Wis. Sept. 29, 2014). In that case, as in this one, the debt collector brought a state court collection action against the wife and not the husband. The spouses sued under the FDCPA and WCA, contending, among other things, that the debt collector had violated § 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id*. at *2. The court rejected the husband's argument that his "potential" liability in the state court collection suit as a result of Wisconsin's marital property law was enough to allow him to maintain his claim. *Id*. at *8. In the court's view, the mere "potential" for liability, in the absence of any facts "even suggesting any conduct by LVNV Funding aimed at or toward Jason," was not enough to allege a plausible injury. *Id*. *Accord Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996) (rejecting plaintiffs' argument that, as a result of Wisconsin marital property law, debtor's spouse was a consumer who could recover damages "without showing that [she] even knew of the existence of the violation let alone experienced any injury from it.").

Plaintiffs do not address these cases or offer any developed argument beyond their bare assertion that Michael VanHuss was "potentially exposed to liability" in the state court collection action. Accordingly, on the basis of the authorities just cited, I find that he is not entitled to recover under the FDCPA.

## ORDER

IT IS ORDERED that the motion of defendants Rausch, Sturm, Israel, Enerson & Hornik and Absolute Resolutions Corp. for summary judgment, dkt. 29, is GRANTED IN PART and DENIED IN PART:

It is GRANTED with respect to Patricia VanHuss's claims under the Wisconsin Consumer Act and 15 U.S.C. § 1692e(5), and to all of Michael VanHuss's claims.

It is DENIED as to Patricia VanHuss's claim under 15 U.S.C. § 1692g(b).

Entered this 14th day of April, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge